(55 Misc. 102)

## COOPER v. MOORE.

(Supreme Court, Special Term, Westchester County. June 12, 1907.)

CANCELLATION OF INSTRUMENTS—UNDUE INFLUENCE—FIDUCIARY RELATIONS—BURDEN OF PROOF.

In a suit to set aside an assignment of certain bonds made by an aged mother to her son because of the latter's alleged fraud and undue influence, the burden of proof was not shifted to the son to establish that the assignment was fair and honest and the assignor's voluntary act until there was proof, not only of the existence of fiduciary relations between the mother and son at the time of the assignment, but also that the mother was suffering from some mental impairment or other weakness as a result of which the son's mind and purpose was substituted for that of the mother.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Cancellation of Instruments, § 100.]

Suit by Elizabeth C. Cooper, individually and on behalf of the estate of Mary Moore, deceased, against James Moore, Jr., individually and as administrator of the goods, etc., of Mary Moore, deceased. Judgment for defendant.

Wm. Porter Allen, for plaintiff.
Leth B. Robinson, for defendant.

TOMPKINS, J. Plaintiff, a daughter of Mary Moore, deceased, asks for a judgment against James Moore, Jr., a son of the said Mary Moore, adjudging that the execution and delivery of an instrument or bill of sale, executed by the said Mary Moore, deceased, and the defendant as an individual, by which instrument the said Mary Moore, deceased, transferred to her son, the defendant, certain bonds of the admitted value of $25,000, and by which instrument the defendant agreed in consideration of the said transfer to pay unto the said Mary Moore during her lifetime the sum of $1,200 annually, and, upon her death, to pay unto her daughter, the plaintiff herein, the sum of $600 each year during her lifetime, was obtained by the defendant from the said Mary Moore by fraud and duress and undue influence, and that the execution and delivery of the same was not the free act and deed of the said Mary Moore, and decreeing that the said bonds were the lawful property of the said Mary Moore at the time of her death, and now belong to her estate, and adjudging that the defendant as administrator charge himself with and account for said bonds and the income therefrom.

It is admitted that the said Mary Moore died in May, 1906, intestate, at the age of from 82 to 85 years, leaving her surviving the plaintiff and defendant, her only children and heirs at law. Defendant was appointed administrator, and, on his accounting as such, charged himself with about $1,100 of personalty. It is agreed that if the instrument now in question had not been executed and delivered, or if void, his account as such administrator should be surcharged with the value of said bonds, amounting to at least $25,000. For many years prior to and down to the time of her death the said Mary Moore resided with the plaintiff and the other members of the household, who included a daughter and son of the plaintiff. In July, 1905, the plaintiff's daughter Kate Cooper, who resided with her mother, the plaintiff, and her grandmother, the said Mary Moore, wrote to her uncle, the defendant, asking him to take care of her mother's (the plaintiff's) affairs and income after October 1, 1905, giving as a reason the "continual friction," and "rows" in their household, the principal cause of which she charged against her grandmother, Mary Moore. In this letter the defendant was given notice that Kate Cooper intended leaving her home in October following, and in this letter, as well as by another written August 7, 1905, defendant was urged to take charge of the income and affairs of the household and pay the bills, etc. On the 1st day of October, 1905, Mary Moore went alone from her home at Dobbs Ferry to the defendant's home in New York City, and there, on that day, executed the instrument in question and now attacked by the plaintiff. It is under seal and duly acknowledged, and the formalities of its execution were testified to by Caroline N. Moore, the defendant's wife, who also testified that she read it to Mary Moore, and that she understood its contents, and declared that it was all right.

The complaint charges that Mary Moore was of feeble mind and body, nearly blind and wholly unfit to do any business, and that the defendant, taking advantage of her infirmities, induced her to allow

him to act as her confidential agent, and that through his solicitations she was induced to deliver to him as such confidential agent the said securities, and that he converted them to his own use, and that the transfer was without consideration; that the defendant, while acting in a fiduciary capacity and knowing the feeble, mental, and physical condition and susceptibility to deceit of Mary Moore, by fraud, duress, undue influence, and false representation induced and procured her to execute and deliver the said instrument. There is no evidence of any mental weakness on the part of Mary Moore. On the contrary, the testimony of all the witnesses who testified on that subject was to the effect that her mind was perfectly sound. Indeed, it was practically admitted by plaintiff on the trial that she possessed sufficient mental capacity for the transaction of her own business. She traveled alone, made visits, attended church, and conversed with her relatives and friends in a rational manner after the execution of the paper and down to a short time before her death. There was no physical or mental impairment, except such as is incident to ordinary old age. There is no evidence of undue influence, duress, fraud, or false representation, nor any testimony or circumstances from which any such thing can be inferred. Plaintiff claims that there existed a confidential or fiduciary relation between mother and son, and that there is therefore a presumption of undue influence, and that the burden rests upon the defendant of showing that the deceased knew the nature and effect of the paper, and that it was her voluntary act, and of proving the fairness and honesty of the transaction.

Before the burden of proof is shifted to the defendant, there must be proof, not only of the existence of a fiduciary relation, but that the person claimed to have been unduly influenced was suffering from some mental impairment or other weakness as a result of which the mind and purpose of the one accused of exercising undue influence is substituted for the mind and will of the one whose act it is claimed to be. Here there was nothing more confidential than is usual between a mother and her only son, and I can find no evidence of physical or mental weakness, or of such confidential or fiduciary relations as to cast upon the defendant the burden of explaining the transaction. For six or seven months after the execution of the instrument and until the death of his mother the defendant each month paid to her the amount fixed by the said agreement to be paid; she thereby recognizing and ratifying its existence and validity.

Judgment for the defendant on the merits. Submit findings and judgment.